**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**GORDON A. SHARPE,**

          Plaintiff,

**v.**
                                   **CIVIL ACTION NO. 3:23-cv-175
(GROH)**

**STATE, BERKLEY COUNTY
MAGISTRATE COURT, WV DIVISION
OF MOTOR VEHICLES, TROOPER TA
ELLIS BADGE #152, PROSECUTOR,
EVERETT FRAZIER, SUSAN G. RINGER,
JENNIFER PIERSON, and DARRELL SHULL,**

          Defendants.

**REPORT AND RECOMMENDATION**

## I.     INTRODUCTION

Currently pending before the Court is pro se Plaintiff Gordon A. Sharpe's Motion [ECF No. 6] for Leave to Proceed in Forma Pauperis.[1] Because Plaintiff seeks to proceed *in forma pauperis*, the undersigned must conduct a preliminary review to determine whether Plaintiff's Complaint [ECF No. 1] sets forth any viable claims. See 28 U.S.C. § 1915(e)(2)(B). Because Plaintiff's Complaint fails to state a claim upon which relief can be granted, the undersigned recommends that Plaintiff's Complaint be DISMISSED, without prejudice, and Plaintiff's Motion to Proceed in Forma Pauperis and other outstanding Motions [ECF No. 7, 8, 9, 11] be DENIED as moot.

---

[1] This Motion was referred to the undersigned by order of Judge Groh on September 28, 2023. ECF No. 10.

## II.     <u>STANDARD OF REVIEW</u>

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs . . . ." L.R. Gen. P. 3.01. The plaintiff files this affidavit along with the request or motion for leave to proceed *in forma pauperis*. <u>Id.</u> The Supreme Court of the United States has explained that the purpose of the "federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts." <u>Neitzke v. Williams</u>, 490 U.S. 319, 324 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. <u>See</u> 28 U.S.C. § 1915(e). This includes cases filed by non-prisoners. <u>See</u> <u>Michau v. Charleston Cnty., S.C.</u>, 434 F.3d 725, 727 (4th Cir. 2006) (holding that the district court did not abuse its discretion when it dismissed the non-prisoner complaints under 28 U.S.C. § 1915(e)(2)(B)). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915(e)(2)(B). A case is often dismissed *sua sponte* before the defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." <u>Neitzke</u>, 490 U.S. at 324. Furthermore, if a "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); <u>see</u> <u>also</u> <u>Brickwood Contractors</u>, <u>Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 390 (4th Cir. 2004) (stating that

"questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court").

When reviewing pro se complaints, the Court must construe them liberally. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts must read pro se allegations in a liberal fashion and hold those pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure . . . to allege facts which set forth a claim currently cognizable" in federal court. Gamache v. F.B.I., 2011 WL 4966281, at *1 (D.S.C. Apr. 19, 2011).

As stated above, 28 U.S.C. § 1915(e)(2)(B)(ii) permits the court to dismiss a complaint that "fails to state a claim on which relief may be granted." To state a claim upon which relief can be granted, the Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain enough facts to state a claim for relief that is "plausible" on its face, rather than merely "conceivable." Id. at 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her

3

claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)).

### III.    FACTS AS ALLEGED BY PLAINTIFF IN COMPLAINT

On November 24, 2022, Plaintiff Sharpe contends that Defendant Trooper Ellis, hereinafter "Ellis," pulled him over and alleges that he came to a rolling stop at a stop sign. ECF No. 1-2 at 3, ¶ 1. Apparently, Sharpe informed Ellis that traffic violations were not crimes. Id.  According to the Plaintiff, Ellis disagreed stating, "an operators license is a privilege, you don't have a freedom, you have a privilege to operate a motor vehicle. By getting this license, you agree when you got this license, that you would obey traffic laws, and you did not because you violated 173c4 which is a failure to obey traffic control device." Id. After conversing with Ellis, Plaintiff produced his driver's license. Id. Ellis subsequently asked for Sharpe's car insurance. Id. Sharpe did not provide the requested documentation. Id.

Ellis cited Plaintiff for violation of WV Code 17C-16-09, operation without certification or failure to produce certificate, and WV Code 17C-3-4, failure to obey traffic control device, (a stop sign). ECF No. 1-1 at 10. On December 1, Sharpe sent a document with the heading "Attempt to Cure Re: Conditional Acceptance – Request for Proof of Claim Reference Citation (Account) No. SP2602022089908" to Ellis and another Defendant, the Berkeley County Magistrate Court, regarding his citation. Id. at 2. The document consisted of a list of twenty-three demands of "Proof of Claim[s]" to be met by the Magistrate Court. Id. at 2–4, ¶¶ 1–23. Plaintiff articulated in a following "caveat" section that if the Magistrate Court failed to respond adequately to his demands, the Court would be held in default. Id. at 4. Subsequently, Defendant

4

Magistrate Darrell Shull, hereinafter "Magistrate Shull" issued a Notice to Appear for a hearing set for January 26, 2023, at the Berkeley County Magistrate Court. ECF No. 1-1 at 10. On December 22, 2022, Sharpe mailed a notarized "Notice of Default,"[2] stating that his affidavit went "unrebutted." ECF No. 1-1 at 7–8.

On January 26, 2023, Sharpe attended the hearing at the Magistrate Court. ECF No. 1-2 at 4, ¶ 5. However, Ellis was not present, and Magistrate Shull ordered another hearing set for March 10, 2023. Id. at 4, ¶¶ 5, 6. On January 31, Magistrate Shull mailed Plaintiff another Notice to Appear for the rescheduled hearing. ECF No. 1-1 at 11. Sharpe then mailed a "Notice of Demand" to Magistrate Shull on February 24, 2023. ECF No. 1-2 at 4, ¶ 7. Apparently, the Demand was not met with a signature of delivery on Certified Mail, and so Plaintiff re-mailed the document on March 8, 2023, to which a return receipt was received. ECF No. 1-2 at 4, ¶ 8–11. Sharpe did not attend the March 10, 2023, hearing and he alleges "no one has responded to my affidavit or information submitted into evidence, the offices are either vacated or invaded as knowledge of facts were given." ECF No. 1-2 at 4, ¶ 12.

After the hearing, at which he was not present, Sharpe received a letter from the Tax and Revenue Claims Commission and Transportation Division of the Office of the Attorney General, suspending his driver's license. ECF No. 1-2 at 4, ¶ 15. Plaintiff filed a motion for a hearing with the Defendant West Virginia Division of Motor Vehicles, hereinafter "DMV,"[3] on April 12, 2023, regarding the issues of "Identity/Misidentification, Misrepresentation, and Failure to Respond to my paperwork, and Utter Counterfeit

---

[2] It is unclear to whom the "Notice of Default" was mailed.
[3] Sharpe names both the DMV and its Commissioner, Everett Frazier, hereinafter "Frazier" as Defendants in this lawsuit. ECF No. 1 at 1.

Obligations." ECF No. 1-1 at 12–21; see also ECF No. 1-2 at 4, ¶ 16. Defendant Susan Ringer, hereinafter "Ringer," on behalf of the DMV filed its Motion to Deny Hearing Request on April 24, 2023, asserting that their administrative hearing board was not the proper forum for such a complaint. ECF No. 1-1 at 23–24. The Hearing Examiner, Defendant Jennifer Pierson, hereinafter "Pierson," subsequently granted the Motion in a Final Order on May 11, 2023, denying Plaintiff's request for a hearing. Id. at 26–27.

On his Civil Cover Sheet accompanying his Complaint, Plaintiff marked the box indicating his claim involved Racketeer Influenced and Corrupt Organizations. ECF No. 1-2 at 1. Later in his Complaint, Plaintiff asserts that the "Magistrate Court of Berkeley commit[ted] a malicious prosecution." ECF No. 1-2 at 4, ¶¶ 13, 16. Finally, Sharpe included as an attachment to his Complaint his request for a hearing at the DMV. ECF No. 1-1 at 12–21. In his request, he writes that he is "willing to make claims on Magistrate, Prosecutor, and Trooper ETC Bonds for Oath of Office[4] & Constitutional Violations." ECF No. 1-1 at 19. Liberally construed, these alleged Constitutional violations represent most of Plaintiff's claims. He has also filed several other Motions [ECF No. 7, 8, 9, 11] in this matter.

As a result of the suspension of his license, Sharpe alleges that has suffered harm as he no longer has a reliable means of transportation to and from his workplace. ECF No. 1 at 5. As a remedy, Plaintiff demands "the total sum of $6,997,000 in cash at current market value." ECF No. 1-2 at 5. He further desires another "$6,997,000 in Investment properties." Id.

---

[4] Sharpe includes Berkeley County Magistrate Darrell Shull's signed Oath of Office in his first attachment in his complaint. ECF No. 1-1 at 9. He includes as a citation 5 U.S.C. § 3331, which merely sets out the Oath to be taken by federal officials. He has provided no further information regarding any claims relating to the Oath.

## **DISCUSSION**

### A. **Jurisdiction**

A federal court must be able to exercise jurisdiction over the parties and particular claims raised in a complaint before it can properly adjudicate a case. A federal district court may exercise subject matter jurisdiction over cases that involve a "federal question" or those cases that involve a controversy exceeding $75,000 between citizens from different states. See 28 U.S.C. §§ 1331 and 1332. Under the Federal Rules of Civil Procedure, the Court may dismiss a case at any time if the court determines that the case lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). In this case, the Plaintiff only asserts federal question jurisdiction.

In order to base subject matter jurisdiction on "federal question" jurisdiction under 28 U.S.C. § 1331, the civil case must "aris[e] under the Constitution, laws, or treaties of the United States." The well-pleaded complaint rule requires that the federal question appear on the face of a properly pleaded complaint; otherwise, the court lacks federal question jurisdiction. See Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001) (citing Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986)). Federal question jurisdiction, however, "may not be premised on the mere citation of federal statutes." Weller v. Dep't of Soc. Servs. for City of Balt., 901 F.2d 387, 391 (4th Cir. 1990). Although it is difficult to ascertain what federal questions Defendant is asserting, it is clear that none of them are properly plead.

As previously mentioned, Plaintiff marked on his Civil Cover sheet that the nature of his claim was a Racketeering Influenced and Corrupt Organization ("RICO") claim. ECF No. 1-2 at 1. In various sections of his numerous filings, Plaintiff does not so much as

refer to laws, but rather lists an excessive number[5] of federal, state, and international statutes and authorities without providing any facts relating these statutes and authorities to his case. ECF No. 1-2 at 3; see also ECF No. 1-1 at 12–21; see also ECF No. 9. However, in his attachment to his complaint, he lists the following as the Nature of his Suit and his Cause of Action:

> **Nature Of Suit**: Rico Act, Victims Of Trafficking And Violence Protection Act, Sherman Antitrust Act, Securities Exchange Act, Mail Fraud Act, The Travel Act, Federal Tort Claims Act, False Claims Act.
> **Cause Of Action**: 18 U.S. Code 1001, 1512, 872, 1342, 1985, 3, 1983, 1341, 245, 1592, 1659, 1589, 472, 31, 1621, 2385, 4, 242, 241, 243, 244, 1661, 2385, 1962, 49 Us Code 31132, 33 Usc 931, 5 Usc 3331, 22 Usc 617, 18 Usc 1346, 18 Usca 1952, 18 Usc 3571

ECF No. 1-2 at 3.

Even with the benefit of the nature of the suit and the cause of action identified, the precise meaning of much of the Complaint is unclear. Despite allowing liberal construction of this Complaint and Sharpe's other submissions to the Court, he does not identify which Defendants would have violated any statute or authority. Even so, the Court will proceed in its analysis.

### 1.  Federal Civil Statutes

As a preliminary matter, the unnamed federal civil provisions that Plaintiff listed refer to the Definitions Provision of Title 49 (49 U.S.C. § 31132), Misrepresentation under the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 931), Requirements for Oaths of Office (5 U.S.C. § 3331), and Liability of Officers of Foreign Propagandists (22 U.S.C. § 617).

---

[5] In his Notice of Suit document alone, Sharpe included a list of over 200 separate statutes, without adequately identifying whether any statute had a private cause of action, any conduct that would fit the elements of any cause of action, or which laws applied to which Defendant. See ECF No. 11.

As a matter of law, "private plaintiffs may not bring suits to enforce statutes that do not provide a private cause of action." L.J. v. Wilbon, 633 F.3d 297, 307 (4th Cir.2011) (citing Alexander v. Sandoval, 532 U.S. 275 (2001)). 49 U.S.C. § 31132 is exclusively a definition provision and does not provide for a private right of action. Likewise, 5 U.S.C. § 3331 merely sets out the Oath to be taken by federal officials. There are no named federal officials in this lawsuit.

Further, the statutes cited by Plaintiff governing harbor worker compensation (33 U.S.C. § 931) and foreign propagandists (22 U.S.C. § 617) do not give rise to jurisdiction here. Based on the facts asserted in the pleadings, these statutes are not at all applicable to the present case. The mere citation of these statutes in a Complaint that raises no allegations related to harbor worker compensation or foreign propagandists does not give this Court federal question jurisdiction.

### a. RICO Claims, Mail Fraud, and The Travel Act

Plaintiff also identifies this case on his Civil Cover Sheet as involving RICO violations. ECF No. 1-2 at 1. He does not identify which Defendants he seeks to pursue claims against under this law. Civil causes of action for RICO claims are articulated in 18 U.S.C. §§ 1961–64. The four elements of a civil RICO claim are "1) conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity." Harris v. Navy Fed. Credit Union, No. 1:23-CV-00676, 2023 WL 5321083 (E.D. Va. July 24, 2023); citing Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257, 258 (4th Cir. 2011). A pattern of racketeering exists when defendants have performed "two or more predicate acts of racketeering . . . within a ten-year period." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 181 (4th Cir. 2002).

Liberally construing Plaintiff's complaint, it appears some of the laws cited in the Nature of Suit section of his Complaint would be construed as predicate acts of his RICO claim, namely the Mail Fraud Act and the Travel Act.  "Racketeering activity" is defined as "any act or threat" involving specified crimes under state law punishable by imprisonment for more than one year or "any act [that] is indictable" under various federal criminal statutes, including the Travel Act, 18 U.S.C. § 1952. United States v. Moore, 462 F. App'x 289, 291 (4th Cir. 2012). Likewise, the federal mail statute, which prohibits the use of the mails or interstate wires in furtherance of schemes to defraud, would also qualify as a predicate act. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004); see also 18 U.S.C.A. § 1341.

Sharpe does not allege any conduct involving mail fraud. In fact, the only mention of mail in his complaint is the service of Notices to Appear by Magistrate Shull, the suspension of his license, and the denial of his hearing request by Pierson. ECF No. 1-2 at 3–4, ¶¶ 3, 6, 15, 19.

Likewise, the Travel Act requires a defendant "travel . . .  in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce." 18 U.S.C. § 1952(a). All of the defendants in this matter reside in West Virginia, and Plaintiff has failed to allege any facts whatsoever indicating that they traveled in interstate commerce. He has also failed to provide a coherent timeline of any such events, even assuming they did in fact occur.

As such, Plaintiff fails to allege any facts illustrating that any Defendants committed two or more predicate acts, under any law, of racketeering within a ten-year period, nor does he allege how the conduct of any Defendant constitutes a predicate act under the

RICO statute. Plaintiff simply disagrees with the outcome of a traffic citation.  Plaintiff has not properly plead a RICO claim and therefore, federal question jurisdiction does not exist.

### b.  Victims of Trafficking and Violence Protection Act

Liberally construed, Plaintiff claims that some or all of the Defendants violated the William Wilberforce Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1581–1597 ("TVPRA"), an amendment to the Victims of Trafficking and Violence Protection Act, 18 U.S.C. § 1581–1594 (2000) ("TVPA"). The TVPA was enacted on October 28, 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims."11 Pub.L. 106–386, Div. A, §§ 102(a) & 112(a)(2). As enacted, 18 U.S.C. § 1589 made it a crime to knowingly provide or obtain the labor or services of a person-

> (1) by threats of serious harm to, or physical restraint against, that person or another person;
> (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
> (3) by means of the abuse or threatened abuse of law or the legal process....

18 U.S.C. § 1589 (2003).

The TVPRA amended the TVPA and introduced a statutory civil cause of action under 18 U.S.C. § 1595 in 2003. Pub.L. 108–193, § 4(a)(4), 117 Stat. at 2877. As enacted, 18 U.S.C. § 1595 provided that "[a]n individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator ... and may recover damages and reasonable attorneys fees." Congress amended the TVPRA, effective December 23, 2008.12 Pub.L. 110–457, Title II, § 222(b)(3), 122 Stat. 5068.

Based on the facts asserted in the pleadings, the TVPRA is not applicable to the present case. Plaintiff has plead no facts that would plausibly lead the Court to believe that anyone involved in this case was subjected to human trafficking. Nor are there any allegations that labor or services were obtained from Sharpe, or that they were obtained by threats of force or physical restraint. The extent of the TVPRA's involvement is a mere citation in a Complaint that raises no allegations related to human trafficking. Accordingly, the Court cannot establish federal question jurisdiction under the TVPRA.

### c. The Sherman Antitrust Act

Plaintiff also invokes the Sherman Antitrust Act in his Complaint.[6] In his Notice of Suit, he specifically references Section 1 of the Sherman Act, 15 U.S.C. § 1. He does not identify which Defendants he seeks to pursue claims against under this law. Section 1 of the Sherman Act provides, in relevant part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C.A. § 1. Thus, to establish a § 1 violation, a plaintiff must show: "(1) a contract, combination or conspiracy; (2) that imposed an unreasonable restraint of trade." Dickson v. Microsoft Corp., 309 F.3d 193, 202 (4th Cir.2002).

Here, Plaintiff has not alleged any contract, combination, or conspiracy between any of the actors named as defendants. Further, he has not alleged any actions that would unilaterally or in combination restrain trade. The only actions taken by any Defendant in this case relate to Sharpe's traffic case and request for an administrative hearing [ECF

---

[6] Plaintiff has filed a Motion for Leave to Amend, indicating that he wished to change the Nature for his case to an Antitrust case, as opposed to the original RICO identification he filed on his first Civil Cover Sheet. He has also filed a second Cover Sheet reflecting this change. ECF No. 11-2 at 1. Regardless of the amendment, in either case the court lacks jurisdiction over his claims.

No. 1-2 at 3–4], a far cry from restraints of trade. Therefore, this Court lacks jurisdiction over claims in this case purporting to arise out of the Sherman Act.

### d.  Securities Exchange Act

Plaintiff identifies the Securities Exchange Act as a part of the Nature of his Suit. ECF No. 1-2 at 3. He does not identify which Defendants he seeks to pursue claims against under this law. The Securities Exchange Act and subsequent legislation do provide for private rights of action under federal law. See, e.g., Superintendent of Ins. of State of N.Y. v. Bankers Life & Cas. Co., 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)." Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP, 551 F.3d 305, 311 (4th Cir.2009) (noting that "Section 10(b) creates a private right of action for purchasers or sellers of securities who have been injured by the statute's violation.).

However, Plaintiff fails to identify which, if any, specific causes of action he wishes to proceed under. He further fails to identify any securities exchanges at all in his Complaint, or how any such exchange would violate any law, state or federal. It is not the place of this court to construct a plausible securities exchange claim, as a "judge is not required to piece together causes of action from fragmentary factual recitations." See Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996). Plaintiff's connections to securities exchanges are fragmentary at best. As it stands, there is no jurisdiction to hear such a claim based on the statutes provided by Plaintiff.

### e.  The FTCA

Plaintiff also lists as part of the Nature of his suit the Federal Torts Claims Act ("FTCA"). ECF No. 1-2 at 3. He does not identify which Defendants he seeks to pursue claims against under this law. "The FTCA creates a limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious

13

conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law." Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006) (citing 28 U.S.C. § 1346(b)(1)). Therefore, the FTCA "permits the United States to be held liable in tort in the same respect as a private person ... under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001) (citing Harris v. United States, 718 F.2d 654, 656 (4th Cir. 1983)). The statute does not create causes of action, it merely confers jurisdiction "when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 969 (4th Cir. 1992). Thus, unless a plaintiff pleads (1) a state statute under which a duty arises or (2) a federal law with an analogous state law tort, there exists no subject matter jurisdiction for the federal district court, and the Court must dismiss the plaintiff's claim.

In his Complaint, Sharpe has failed to allege a tort in which a private person would be liable in state court or a federal law with an analogous cause of action in which a duty of care arises. More importantly, Sharpe does not name the United States as a Defendant, nor does he name a federal employee alleged to have caused a tortious injury. He has not provided any basis in law or fact for a FTCA claim, and as such the court lacks jurisdiction over his claim.

### f.  False Claims Act

Plaintiff also lists as part of the Nature of his suit the False Claims Act ("FCA"). ECF No. 1-2 at 3. He does not identify which Defendants he seeks to pursue claims against under this law. The False Claims Act allows private litigants to bring actions on behalf of the government against anyone who, inter alia:

(1) knowingly presents, or causes to be presented, [to the government] a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; or

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 785 (4th Cir. 1999); 31 U.S.C. § 3729(a); 31 U.S.C. § 3730(b).

The False Claims Act states that a claim "includes any request or demand ... for money or property" where the government provides any portion of the money or property requested. 31 U.S.C.A. § 3729(c). "In other words, the False Claims Act at least requires the presence of a claim—a call upon the government fisc [sic]—for liability to attach." Harrison, 176 F.3d at 785.

The FCA allows for suits brought on behalf of the government. Here, Sharpe has alleged no claim against either the state or federal government by a third party. He does not identify himself as bringing a claim on behalf of anyone else. He has alleged no facts showing that a claim was presented to either the state or federal government or that either government paid out any monies to that third party. The only interactions with any governmental entity involve his traffic case. ECF No. 1-2 at 3–4. As such, this Court cannot have jurisdiction for Plaintiff's claims under the FCA.

### g. 42 U.S.C. § 1983

Although Plaintiff does not directly assert a claim, or identify any defendants against who he wishes to pursue claims under 42 U.S.C. § 1983, the Court will provide an analysis under the same. Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of

15

the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in any action at law . . . or suit in equity.

42 U.S.C. § 1983.  The initial inquiry in § 1983 case is as follows: (1) was the conduct complained of committed by a person acting under the color of state law and (2) did that conduct deprive the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995); Harvey v. Harvey, 949 F. 2d 1127, 1130 (11th Cir. 1992).

Under § 1983, a state actor or person acting under the color of state law may be sued for the deprivation of a person's constitutional rights. "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50 (1988)); see also Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor"). Thus, no state law has to be in place that is the source of the constitutional violation.  Rather, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the unconstitutional act.  See West v. Atkins, 487 U.S. at 49 (citing United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)); see also Monroe v. Pape, 365 U.S. 167, 187, 81 S. Ct. 473, 484, 5 L.Ed.2d 492 (1961)).

But as stated above, although courts must construe pro se filings liberally, "generosity is not a fantasy." Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998). "A district judge is not required to piece together causes of action from fragmentary

factual recitations." <u>Cochran</u>, 73 F.3d at 1318. Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court may dismiss a complaint if it fails to state a claim on which relief may be granted. As stated above, the complaint must contain factual allegations that are sufficient "to raise a right to relief above the speculative level" and that "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 555.

It appears that the Constitutional right in question that Sharpe alleges was violated is his "right to travel." ECF No. 1 at 5. Likewise, it appears that during his state and administrative cases, Sharpe attempted to articulate "the difference between Commercial and Non-Commercial 'Driving' or Traveling [sic]" to the Magistrate and Hearing Officer. <u>Id.</u> But "[t]he constitutional right to travel is not a right to travel in any manner, without regulation, and does not provide travelers a right to ignore state traffic laws." <u>Byndon v. Pugh</u>, 350 F. Supp. 3d 495 (N.D.W. Va. 2018); <u>citing</u> <u>United States v. Hare</u>, 308 F.Supp.2d 955 (D. Neb. 2004).

Even assuming that Plaintiff could meet the initial inquiry demonstrating that the named Defendants were acting under color of state law, he has failed to allege facts demonstrating a constitutional right was violated. There is no right to ignore properly imposed state regulations and traffic laws while operating a motor vehicle. As such, the Court lacks jurisdiction over Plaintiff's claim.

### i. Claims Against the Prosecutor

Sharpe does name as a Defendant an unnamed prosecutor who prosecuted "case no. 22-M02M-07098," which led to the suspension of his driver's license. <u>See</u> ECF No. 1-2 at 3. He also alleges that the "Magistrate Court of Berkeley commit[ted] a malicious prosecution." ECF No. 1-2 at 4, ¶ 13. Liberally construing the Complaint, it is clear that the intended Defendant for the malicious prosecution claim is the prosecutor Defendant.

Regarding the malicious prosecution claim, the Court will analyze the claim again through the lens of 42 U.S.C. § 1983.[7]

§ 1983 is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes that it describes." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000) (internal quotations and citations omitted). What is commonly termed a 'malicious prosecution' claim pursuant to § 1983 is actually a "claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution – specifically, that requirement that the prior proceeding terminate favorably to the plaintiff." Id. at 262.

Assuming arguendo that Plaintiff's Complaint can be read as having alleged the two essential elements of a § 1983 claim, Plaintiff's Complaint nevertheless fails to state a claim upon which a specific claim for 'malicious prosecution' can be granted because there is no evidence or assertion that the underlying action[8] with which Plaintiff takes issue has terminated in his favor.

In the instant case, the state traffic action(s) which underly Plaintiff's claims have not ended with a favorable result towards Plaintiff. The end result of Sharpe's traffic case was a suspension of his driver's license. ECF No. 1-2 at 4, ¶ 15. All of his attempts to

---

[7] It is unclear whether Sharpe intends to assert the state law tort of malicious prosecution or attempt to raise a federal claim. Malicious prosecution claims at common law were properly considered state law tort claims. See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 874 (5th Ed.1984). Regarding state law claims of malicious prosecution, "[a] prima facie case of malicious prosecution must include: (1) the initiation or maintenance of a proceeding against the plaintiff by defendant; (2) termination of that proceeding favorable to the plaintiff; (3) lack of probable cause to support that proceeding; and (4) the defendant's malice." Lambert, 223 F.3d at 260 (internal citations omitted). To the extent that a state law tort claim was even alleged, there can be no federal question jurisdiction.

[8] The violations at issue were infractions of traffic regulations and laws related to the operation of a motor vehicle in the state of West Virginia. Even assuming they were criminal in nature, the end result was not a termination in Sharpe's favor.

request a hearing and presumably contest this adjudication have failed. ECF No. 1-2 at 4, ¶¶ 15–19. Thus, Plaintiff's Complaint does not and cannot set forth a prima facie case for 'malicious prosecution.'

### 2. Federal Criminal Statutes

Apart from any RICO theory, regarding claims arising out of Title 18 of the United States Code, Sharpe refers the Court to provisions relating to Perjury and False Statements (18 U.S.C. § 1001), Witness Tampering (18 U.S.C. § 1512), Extortion by Officers or Employees of the United States (18 U.S.C. § 872), Use of a Fraudulent Name While Doing Business (18 U.S.C. § 1342),  Accessory After the Fact (18 U.S.C. § 3),  Mail Fraud (18 U.S.C. § 1341),  Federally Protected Activities, (18 U.S.C. § 245),  Involuntary Servitude (18 U.S.C. § 1592),  Piracy (18 U.S.C. § 1659),  Forced Labor (18 U.S.C. § 1589), Counterfeit Obligations (18 U.S.C. § 472),  Perjury Generally (18 U.S.C. § 1621), Advocating the Overthrow of Government (18 U.S.C. § 2385), Misprision of Felony (18 U.S.C. § 4), Violation of Civil Rights (18 U.S.C. §§ 241–44), Piracy and Privateering (18 U.S.C. § 1661), Definition of "scheme or artifice to defraud" (18 U.S.C. § 1346), Use of U.S. Mail for Unlawful Activities (18 U.S.C. § 1952), and Imposition of a Sentence of Fine (18 U.S.C. § 3572). Additionally, 18 U.S.C. § 31 refers to the definition provisions of Title 18. Plaintiff has provided no further insight or alleged no facts that would shed light on what definitions he would deem relevant. Some of the referenced sections in Title 18 do not exist.[9]

All of the referenced sections are located in Parts I and II of Title 18, Crimes and Criminal Procedure, respectively. However, criminal statutes cannot be the basis of

---

[9] There are no provisions in Title 18 that bear the section numbers of 1985 or 1983.

jurisdiction in a civil case. See Whittington v. U.S. Bank Nat. Ass'n, No. 4:12-CV-03167-MGL, 2013 WL 2285943, at *11 (D.S.C. May 23, 2013) (finding that a federal criminal statute did not give the court federal question jurisdiction over a civil case.). While federal district courts do have jurisdiction over criminal cases, a plaintiff filing a civil case cannot bring a criminal case against another person. See Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990) (stating that "[n]o citizen has an enforceable right to institute a criminal prosecution."). Accordingly, the Court cannot exercise jurisdiction over the alleged violation of federal criminal law asserted by Plaintiff in this civil case.

**B. The Named Defendants are Immune from Suit**

Assuming *arguendo* that the Court were to find jurisdiction over any of Plaintiff's claims, the Defendants named in Plaintiff's lawsuits are immune from suit under various theories of immunity. As a result, any claims by which this Court would have valid jurisdiction should be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e).

**1. Judicial Immunities**

Sharpe names as Defendants Berkeley County Magistrate Darrell Shull, who presided over the traffic case which led to the suspension of Sharpe's license. ECF No. 1-2 at 3. Again, it is unclear exactly what claims Sharpe is pursuing against Magistrate Shull.

In any event, the Supreme Court has long held that judges are absolutely immune from lawsuits related to the exercise of their judicial jurisdiction. Pierson v. Ray, 386 U.S. 547, 554 (1967); Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). Magistrates are judicial officers and are thus entitled to absolute immunity under the same conditions as are judges. Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir.1987). However, a judge who

acts without jurisdiction, or who has not performed a judicial act, has no absolute judicial immunity. <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978). In determining whether an act is a judicial act, the court must consider "whether [the act] is [a] function normally performed by a judge" and "whether [the parties] dealt with the judge in his judicial capacity." <u>Stump</u>, 435 U.S. at 362.

Sharpe alleges no factual bases to support a conclusion that Magistrate Shull was acting outside of the bounds of his jurisdiction or performing acts atypical for a state Magistrate. The extent of factual allegations against Magistrate Shull in this case consist of scheduling hearings relating to Sharpe's traffic case and mailing notices of appearance to Sharpe regarding those hearings. ECF No. 1-2 at 4, ¶¶. Therefore, any claims against him should be dismissed for failure to state a claim.

### 2. Prosecutorial Immunities

Regarding Sharpe's malicious prosecution claim generally, <u>see</u> <u>supra</u> Section IV.A.1.g.i., and hypothetically assuming a valid claim exists, prosecuting attorneys who are sued under 42 U.S.C. § 1983 are absolutely immune from individual liability when performing prosecutorial functions. <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976); <u>Ostrrzenski v. Seigel</u>, 177 F.w3d 245 (4th Cir. 1999). For instance, prosecutors are entitled to absolute immunity when seeking extradition of a defendant, <u>Dababnah v. Keller-Burnside</u>, 208 F.3d 467 (4th Cir. 2000), or deciding to prosecute an arrestee. <u>Wadkins v. Arnold</u>, 214 F.3d 535 (4th Cir. 2000).  Furthermore, a prosecuting attorney has absolute immunity "for initiating a prosecution and in presenting the State's case," <u>Imbler</u>, at 431, including preparing and filing charging documents. <u>Kalina v. Fletcher</u>, 522 U.S. 118, 129 (1997).

There is an exception to the absolute prosecutorial immunity rule, however, if the prosecuting attorney acts in the role of administrator or investigative officer, rather than as a prosecutor. Imbler, 424 U.S. at 430. Thus, when a court determines whether a prosecuting attorney is entitled to absolute immunity, it must examine the type of activity performed, not the identity of the individual who performed it. Forrester v. White, 484 U.S. 219, 229 (1988).

In relation to Sharpe's Complaint, the allegation of malicious prosecution arises following his lack of appearance in the traffic hearing in front of the state Magistrate. ECF No. 1-2 at 4, ¶ 13. The only mention of the claim, in its entirety, states "Magistrate Court of Berkeley [sic] commits a malicious prosecution." Id. Such a bare-boned legal assertion is nothing more than a "conclusion" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. The mere fact that Berkeley County initiated and prosecuted a traffic case, especially when Plaintiff intentionally avoided attending an administrative adjudicative hearing,[10] cannot give rise to a claim upon which relief can be granted.

### 3. Eleventh Amendment Immunities

Plaintiff names as a Defendant in this case the "state." See ECF No. 1 at 1. Regarding the state of West Virginia, the Eleventh Amendment provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In

---

[10] In his Complaint, Sharpe admits that he did not "go to court on 3/10/2023 because no one has responded to [his] affidavit or information submitted into evidence, the offices are either vacated or invaded as [his] knowledge of facts were given." ECF No. 1-2 at 4, ¶ 12.

interpreting the Eleventh Amendment, the United States Supreme Court has consistently recognized that "an unconsenting State is immune from suit bought in federal courts by her own citizens as well as by citizens of another state." Edelman v. Jordan, 415 U.S. 651, 663 (1974).

An exception to the general rule of immunity is the doctrine of abrogation, in which the Supreme Court has found that "when acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985).

Additionally, though Eleventh Amendment Immunity is inherent to the states, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court." See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002). Such a waiver may be accomplished through a state statute, but only if the statute "specif[ies] the State's intention to subject itself to suit in federal court." See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). See also Allen v. Cooper, 895 F.3d 337, 347 (4th Cir. 2018) ("As the Supreme Court has made clear, a State must expressly consent to suit in federal court to waive its immunity under the Eleventh Amendment."), cert. granted, No. 18-877 (U.S. June 3, 2019).

West Virginia is shielded from lawsuits brought by its citizens against it, and Plaintiff provides no arguments or cites to any law demonstrating Congressional abrogation or that West Virginia has consented to any of the numerous claims brought by Plaintiff in this case. Indeed, Plaintiff seems more interested in challenging the legitimacy

of state governments and their agencies than remedying any perceived wrongs via a known cause of action.[11] As such, no claim Plaintiff alleges can succeed against West Virginia in this case.

### a. State Agencies

Likewise, claims against state agencies also must fail. Sharpe identifies the West Virginia Department of Motor Vehicles as a Defendant in this case, again without specifying a claim or cause of action. ECF No. 1 at 1. But as an arm of the state itself, state agencies like the Division of Motor Vehicles are shielded from suit in federal court by Eleventh Amendment sovereign immunity. See, e.g., George v. Kanawha Cnty. Sheriff's Dep't, 2009 WL 367517, at *1 (S.D.W. Va. Feb. 3, 2009); see also Ballenger v. W. Reg'l Jail, 2018 WL 3190755, at *1 (S.D.W. Va. June 28, 2018).

Sharpe also names the Berkeley County Magistrate Court as a Defendant. ECF No. 1-2 at 3. However, the Supreme Court of Appeals of West Virginia is a state entity immune from suit in federal court. Grondin v. Wood Co. Prosecutors Off., 2014 WL 794257, at *7 (S.D.W. Va. Feb. 27, 2014). Because of this, the Berkeley County Magistrate Court itself is immune from suit under the Eleventh Amendment. Strasburg v. Min. Cnty. Magistrate's Off., No. 3:22-CV-126, 2022 WL 18674953 (N.D.W. Va. Aug. 24, 2022), report and recommendation adopted, No. 3:22-CV-126, 2023 WL 1976710 (N.D.W. Va. Feb. 13, 2023) (noting that the "Mineral County Magistrate Court, which is supervised by the Supreme Court of Appeals of West Virginia is thus also considered an arm of the State and is likewise immune from suit under the Eleventh Amendment[.]").

---

[11] Sharpe writes in his "Review of Material Facts" section of his request for a hearing, included with his complaint, that "Ignorance is bliss, I owe you nothing, I owe the state nothing, I owe the government, [sic] NOTHING." ECF No. 1-1 at 33.

As with the state of West Virginia itself, Plaintiff has not provided any legal rationale for excepting his claims from the agencies' broad shields of immunity. Nor has he provided a factual basis for doing so. The entirety of the DMV's alleged involvement was denying Sharpe's request for a hearing, according to the Commissioner's response on the grounds that his claims were better adjudicated in the Berkeley Magistrate Court. ECF No. 1-1 at 26; see also id. at 25. The Magistrate Court itself simply adjudicated a traffic matter, well within its purview as a County governmental body. ECF No. 1-2 at 3–4, ¶¶ 2–15. As such any claims should be dismissed for failure to state a claim.

### 4. Qualified Immunity

Plaintiff also identifies State Trooper Ellis, Commissioner Everett Frazier, Deputy Attorney General Susan G. Ringer, and Hearing Examiner Jennifer Pierson as Defendants in his lawsuit. See ECF No. 1 at 1.

The allegations he provides against Ellis are that Ellis stopped him after Plaintiff ran through a stop sign. ECF No. 1-2 at 3. After some discussion, Ellis cited him for failure to drive with registration and insurance. Id. Liberally construed, as discussed above, he wishes to seek a remedy for a constitutional violation under § 1983. But government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a defendant is entitled to qualified immunity, the "first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct, recognizing that the right must be defined at the appropriate level of particularity. Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). We then consider whether, at the time of the claimed violation, this right was

25

clearly established and '"whether a reasonable person in the official's position would have known that his conduct would violate that right."' Id. (quoting Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992))." Winfield v. Bass, 106 F.3d 525, 530 (4th Cir. 1997).

"Qualified immunity 'balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.' Pearson v. Callahan, 555 U.S. 223, 231 (2009). Put differently, qualified immunity shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)." Strickland v. Halsey, 2015 WL 4928270, at *3 (4th Cir. Aug. 19, 2015).

"Consequently, a defendant is entitled to qualified immunity in a § 1983 case if (1) his or her conduct did not violate the constitutional right at issue or (2) the right was not 'clearly established' at the time of the incident. Pearson, 555 U.S. at 232, 236. Succeeding on either prong is sufficient for entitlement to qualified immunity, and courts may begin with either prong. Id. at 234."

As discussed above, see supra Section IV.A.1.g, the right that Sharpe seems to allege was violated was his right to travel. In terms of Ellis' involvement with the case, no facts were alleged to show that there was in fact a constitutional violation, let alone that Ellis knew of the right, or that the right violated was clearly established. As such, under the first prong of the qualified immunity analysis, the claim against Ellis is barred by qualified immunity.

Frazier was the Commissioner of the DMV at all times relevant to the conduct underlying this case. Certainly, any actions he took would have taken place under color of state law by virtue of his appointed position. However, Sharpe has provided no evidence of conduct on the part of Frazier that would indicate a constitutional violation, or that Frazier knew of such a violation. As such, Frazier would be entitled to qualified immunity.

Similarly, Sharpe identifies Pierson as a Defendant. ECF No. 1 at 1. However, he makes no mention as to any conduct perpetrated by Pierson. In fact, the only references to Pierson in the complaint are attached documents signed by Pierson continuing actions in state court. See ECF No. 1-2 at 27, 28. Sharpe identifies no action taken by the Defendant that could conceivably indicate a constitutional violation, or that Pierson knew of such a violation. For the foregoing reasons, Pierson would be entitled to qualified immunity.

Finally, Plaintiff also names Ringer as a Defendant. ECF No. 1 at 1. Ringer represented the Division of Motor Vehicles over the course of the litigation regarding Sharpe's request for a hearing. ECF No. 1-2 at 4, ¶ 16–19. Again, the only other references to Ringer in the complaint are attached documents signed by Ringer, which are signed motions to continue the hearing date before the DMV. ECF No. 1-1 at 23. For the same reasons as Ellis, Frazier, and Pierson, Ringer is entitled to qualified immunity.

### C. Sharpe Fails to State a Claim

Liberal construction of a pro se Complaint does not relieve litigants of the requirements under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a)(2). Here, even assuming jurisdiction is warranted, the Plaintiff has failed to provide "a short and

plain statement of the claim showing that the pleader is entitled to relief." He has failed to identify proper causes of action, name proper Defendants, or tie the named Defendants to the statutes he cites in any way. Further, any Defendants he does name are also entitled to absolute and/or qualified immunity. Thus, he fails to state a claim upon which relief can be granted.

## V.   <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned finds that Plaintiff's Complaint fails to state a claim upon which relief can be granted. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF No. 1] be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff's Motion to Proceed in Forma Pauperis [ECF No. 6] and other Motions [ECF No. 7, 8, 9, 11] be **DENIED** as moot.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable GINA M. GROH, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Wright v. Collins</u>, 766 F.2d 841, 845–48 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to mail a copy of this Report and Recommendation to the pro se Plaintiff by certified mail, return receipt requested, to his

last known address as reflected on the docket sheet and to counsel of record, if any, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

**DATED:** October 20, 2023

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE